UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FRANK R.,[1]

                    Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

<u>DECISION & ORDER</u>

21-CV-6145MWP

## **<u>PRELIMINARY STATEMENT</u>**

Plaintiff Frank R. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 12).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 10). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

### I.      Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.

Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

        A person is disabled for the purposes of SSI and disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must

employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)

(*per curiam*).  The five steps are:

> (1)    whether the claimant is currently engaged in substantial gainful activity;
>
> (2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and
>
> (5)    if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


II.   **ALJ's Decision**

   In his decision, the ALJ followed the required five-step analysis for evaluating

disability claims.  Under step one of the process, the ALJ found that plaintiff had not engaged in

substantial gainful activity since December 6, 2017, the alleged onset date.  (Tr. 12).[2]  At step

two, the ALJ concluded that plaintiff had the severe impairments of "status-post L5-S1

decompression and fusion (February 2019); and lumbar degenerative spondylosis at L5-S1."

(*Id.*).  The ALJ concluded that plaintiff also suffered from other impairments that were not

severe.  (Tr. 12-14).  At step three, the ALJ determined that plaintiff did not have an impairment

(or combination of impairments) that met or medically equaled one of the listed impairments.

(Tr. 14).

   The ALJ concluded that plaintiff retained the RFC to perform light work with

certain limitations.  (*Id.*).  Specifically, plaintiff was limited to lifting/carrying twenty pounds

occasionally and ten pounds frequently, and sitting, standing, and walking six hours out of an

eight-hour workday.  (*Id.*).  Plaintiff could occasionally stoop, kneel, crouch, crawl, climb

ladders, ropes, and scaffolds, and push and pull up to twenty pounds.  (*Id.*).  Plaintiff was to

avoid concentrated exposure to vibration.  (*Id.*).

---

[2]  The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize
the internal Bates-stamped pagination assigned by the parties.

At steps four and five, the ALJ found that plaintiff was unable to perform his past relevant work but that other jobs existed in the national economy that plaintiff could perform, including the positions of warehouse checker, photostat-operator, and marker.  (Tr. 18-19).  Accordingly, the ALJ found that plaintiff was not disabled.  (Tr. 19-20).

## III.   **Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket # 8-1).  Plaintiff argues that the ALJ failed to incorporate into the RFC limitations assessed by independent medical examiner Steven Hausmann ("Hausmann"), MD, in his May 17, 2018 opinion, despite finding Hausmann's opinion to be persuasive.  (*Id.* at 12-15).  Next, plaintiff maintains that the ALJ improperly relied on the stale opinions of state consultative examiner Susan Dantoni ("Dantoni"), MD, and state non-examining consultative physicians M. Vazquez Gonzalez ("Vazquez Gonzalez"), MD, and A. Vinluan ("Vinluan"), MD, in determining the physical RFC.  (*Id.* at 15-20).  Finally, plaintiff maintains that the ALJ improperly failed to evaluate medical opinions provided by his treating pain management provider Oliver Masaba ("Masaba"), MD.  (*Id.* at 20-23).[3]

## IV.   **Analysis**

Plaintiff maintains that the medical opinions of record – including Dantoni's September 5, 2019 opinion, Vasquez Gonzalez's October 15, 2019 opinion, and Vinluan's

---

[3] Plaintiff's challenges relate to his physical impairments, and plaintiff does not challenge any portion of the ALJ's determination relating to his mental limitations.  Therefore, the Court will limit its analysis and discussion of the relevant medical evidence to plaintiff's physical impairments.

January 23, 2020 opinion, all of which the ALJ found to be persuasive (Tr. 17-18, 52-63, 65-78, 731-35) – were stale in view of subsequent developments in plaintiff's medical record and thus left the ALJ without an up-to-date medical assessment of plaintiff's functional limitations. (Docket # 8-1 at 15-20).  According to plaintiff, subsequent to these opinions, his lumbar spine impairment significantly deteriorated to such a degree that his treating neurosurgeon recommended that he undergo revision lumbar fusion surgery.  (*Id.*).  Plaintiff contends that the ALJ overlooked evidence of that recommendation and formulated an RFC without the benefit of a medical opinion that considered his deterioration and the neurosurgeon's recommendation.  (*Id.* at 13-15).

       "A stale medical opinion does not constitute substantial evidence to support an ALJ's findings." *Whitsett v. Berryhill*, 2019 WL 156261, *4 (W.D.N.Y. 2019) (quoting *Clute ex rel. McGuire v. Comm'r of Soc. Sec.*, 2018 WL 6715361, *5 (W.D.N.Y. 2018)); *Caswell v. Berryhill*, 2018 WL 4404578, *4 (W.D.N.Y. 2018) ("a stale medical opinion . . . is not substantial evidence to support an ALJ's finding").  An opinion "may be stale if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision." *Whitsett v. Berryhill*, 2019 WL 156261 at *4 (quotations omitted).  "In other words, [while] the mere passage of time does not render an opinion stale[,] . . . significant developments in an individual's medical history after the examination might." *Vazquez v. Saul*, 2019 WL 3859031, *3 (W.D.N.Y. 2019) (citations and quotations omitted).

       When plaintiff applied for DIB, he reported that he suffered from lumbar disc disorder and spondylosis, both with radiculopathy.  (Tr. 230).  At that time, plaintiff had an active worker's compensation claim, and he was evaluated by Hausmann on May 17, 2018 in connection with that claim.  (Tr. 682-86).  Plaintiff reported that he had suffered a work-related

injury in December 2017 that resulted in persistent sharp pain radiating from his buttock down the back of his left leg. (*Id.*). He had attempted chiropractic treatment, as well as epidural injections, with minimal relief. (*Id.*). Plaintiff also reported that he had recently been evaluated by neurosurgeon Christin M. McMorrow ("McMorrow"), MD, who had recommended lumbar surgery. (*Id.*).

Upon physical examination, plaintiff demonstrated limited lumbar flexion with full extension. (*Id.*). He had a positive slump test on the left but an essentially negative straight leg raise. (*Id.*). He demonstrated intact strength, sensation, and reflexes. (*Id.*). Hausmann agreed with McMorrow that a lumbar decompression and fusion surgery would be appropriate and anticipated that plaintiff would not reach maximum medical improvement until approximately one year after surgery. (*Id.*). He opined that plaintiff could return to work with several restrictions, including no repetitive bending or stooping, no lifting over twenty pounds, and lifting repetitively only ten to fifteen pounds. (*Id.*). According to Hausmann, plaintiff would be able to stand and walk for four to six hours per day and could sit the remainder of the workday with breaks and position changes every thirty to sixty minutes. (*Id.*).

Following Hausmann's evaluation, plaintiff began pain management treatment with Masaba, who recommended a nerve conduction study to evaluate for the presence and severity of left-sided lumbar radiculopathy. (*See, e.g.*, Tr. 804-21). That study, conducted on October 2, 2018, demonstrated chronic L5 radiculopathy. (Tr. 820). On February 14, 2019, McMorrow performed plaintiff's lumbar decompression and fusion surgery. (Tr. 498-500). Following the surgery, plaintiff participated in physical therapy and continued to receive pain management treatment with Masaba, as well as post-surgical monitoring from McMarrow. (Tr. 555-86, 990-1077, 1090-94, 1131-56, 1245-65). Medical records suggested that the surgery

successfully alleviated plaintiff's left leg pain, although he continued to complain of pain in his back and left hip.  (Tr. 1146).

On July 16, 2019, Hausmann re-evaluated plaintiff in connection with his worker's compensation claim.  (Tr. 922-25).  Plaintiff reported that he was able to drive and perform some activities of daily living, including occasional yard work.  (*Id.*).  Hausmann's examination of plaintiff was largely normal, with the exception of reduced lumbar range of motion.  (*Id.*).  Hausmann opined that plaintiff should be able to return to work with some restrictions.  (*Id.*).  Specifically, Hausmann opined that plaintiff was limited to lifting, pushing, and pulling a maximum of forty pounds and lifting repetitively twenty pounds.  (*Id.*).  In Hausmann's view, plaintiff could stand and walk to tolerance.  (*Id.*).

On September 5, 2019, Dantoni conducted an internal medicine examination of plaintiff.  (Tr. 731-35).  Plaintiff reported that his pain had significantly improved since his surgery, but that he continued to experience consistent pain on a daily basis.  (*Id.*).  Plaintiff reported that he was able to walk approximately one mile per day, but had difficulty twisting, bending, sitting or standing for prolonged periods of time and needed to change positions frequently.  (*Id.*).  According to plaintiff, he was able to perform household tasks such as meal preparation and laundry, although he sometimes needed assistance.  (*Id.*).

Upon examination, plaintiff was in no acute distress, had normal gait and stance, was able to complete heel and toe walking and rise from a chair without difficulty, used no assistive devices, and needed no help changing for the examination or getting on and off the exam table.  (*Id.*).  He was able to squat only 25% of full.  (*Id.*).  Plaintiff's cervical spine showed limited flexion, extension, and rotary movement, with significant pain in his neck during movement.  (*Id.*).  His lumbar spine flexion was 30 degrees, extension 5 degrees, lateral flexion

10 degrees bilaterally, and his lateral rotation was 10 degrees bilaterally.  (*Id.*).  Again, he demonstrated significant pain when performing lumbar movements.  (*Id.*).  Plaintiff had full range of motion in his shoulders, elbows, forearms, wrists, hips, knees, and ankles, and a straight leg raise was negative bilaterally.  (*Id.*).  Dantoni noted that plaintiff had a decreased left leg reflex, but that his reflexes and sensation were otherwise intact.  (*Id.*).  According to Dantoni, plaintiff had intact hand and finger dexterity and full grip strength bilaterally.  (*Id.*).

Dantoni assessed that plaintiff had mild limitations for prolonged sitting, prolonged standing, prolonged walking, climbing stairs, bending, lifting, and carrying.  (*Id.*).  According to Dantoni, he had no limitations for kneeling, reaching, handling objects, hearing, seeing, or speaking.  (*Id.*).  Dantoni noted that plaintiff was seven months post-surgery and that he could be reevaluated in six months to assess his surgical recovery.  (*Id.*).

Vazquez Gonzalez reviewed Dantoni's evaluation, as well as plaintiff's medical records, including imaging of his lumbar spine that demonstrated "excellent appearance L4-S1 fusion."  (Tr. 56-57).  On October 15, 2019, Vazquez Gonzalez opined that plaintiff was capable of standing and/or walking for approximately six hours of an eight-hour workday, sitting for approximately six hours of an eight-hour workday, and could lift twenty pounds occasionally and ten pounds frequently.  (Tr. 60).  Vazquez Gonzalez also concluded that plaintiff could only occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes and scaffolds.  (*Id.*).  Finally, Vazquez Gonzalez recommended that plaintiff avoid concentrated exposure to vibrations.  (Tr. 61).

Following Vazquez Gonzalez's evaluation, plaintiff continued to experience back and hip pain, prompting further evaluation by his treating providers.  On October 31, 2019, plaintiff returned to Masaba, complaining of ongoing radiating pain limiting his ability to sit,

9

stand, or ambulate more than twenty minutes at a time.  (Tr. 1090-94).  Because plaintiff's

radiating pain symptoms had recurred despite his surgery, Masaba recommended a repeat nerve

conduction study in order to "rule out potential peripheral nerve entrapment versus continued

radiculopathy."  (*Id.*).  On November 18, 2019, plaintiff met with McMorrow for further

evaluation.  (Tr. 885-88).  Plaintiff reported overall improvement since his surgery, but

continued hip and back pain, particularly with physical exertion.  (*Id.*).  According to

McMarrow, although imaging of plaintiff's lumbar spine demonstrated "faint halos around the

S1 screws suggesting loosening," there was no evidence of instability.  (*Id.*).  McMarrow

indicated that if plaintiff's pain continued to persist, she would recommend a CT/SPECT study.

(*Id.*).  She noted that plaintiff would like to begin working again, but that Masaba had

recommended that he not return to work until his fusion had completely healed. (*Id.*).

On January 23, 2020, Vinluan reviewed plaintiff's medical records, including

treatment notes from plaintiff's November 18, 2019 appointment with McMarrow.  (Tr. 75-76).

Vinluan opined that plaintiff was capable of standing and/or walking for approximately six hours

of an eight-hour workday, sitting for approximately six hours of an eight-hour workday, and

could lift twenty pounds occasionally and ten pounds frequently.  (Tr. 74-75).  Vinluan also

concluded that plaintiff could only occasionally stoop, kneel, crouch, crawl, and climb ladders,

ropes and scaffolds.  (*Id.*).

On February 19, 2020, plaintiff attended another appointment with McMarrow.

(Tr. 1245-48).  Due to plaintiff's continued complaints of pain, McMarrow recommended that he

participate in additional physical therapy.  (*Id.*).  A few days later, on February 28, 2020,

Hausmann conducted another evaluation of plaintiff.  (Tr. 1174-77).  Plaintiff reported that he

was able to drive, do laundry, prepare meals, and assist his wife around the house.  (*Id.*).  He also

reported walking approximately one mile per day on the treadmill.  (*Id.*).  Hausmann reviewed

plaintiff's medical records, including his most recent lumbar spine x-ray, which demonstrated

faint halos around the S1 screws, suggesting loosening.  (*Id.*).  Hausmann opined that plaintiff

could push, pull, and lift up to fifty pounds at a time and up to twenty-five pounds repetitively.

(*Id.*).  Hausmann indicted that plaintiff could "stand and walk to tolerance at this point and take

breaks as required relative to his symptoms."  (*Id.*).  According to Hausmann, in his view

plaintiff had reached maximum medical improvement because plaintiff appeared "to be receiving

maintenance care."  (*Id.*).

       March 31, 2020 treatment notes indicate that the nerve conduction study ordered

by Masaba demonstrated that plaintiff continued to suffer from chronic L5 radiculopathy,

although it had improved from the study conducted prior to plaintiff's surgery.  (Tr. 1250-53).

Based upon plaintiff's continued symptoms, McMarrow ordered a myelo/CT and SPECT fusion

study.  (*Id.*).  Plaintiff returned for an appointment with McMarrow on May 19, 2020 to review

the results of the study.  (Tr. 1259-65).  The images demonstrated an "[i]ntense uptake at the

level of the L5-S1 disc on the left in the right L5-S1 facet consistent with incomplete

incorporation at this time."  (*Id.*).  Based upon the new images, McMarrow recommended

surgery to remove the instrumentation and a revision of the fusion at L5-S1.[4]  (*Id.*).

       In his decision, the ALJ considered the limitations assessed by Hausmann,

Dantoni, Vazquez Gonzalez, and Vinluan, finding each of them to be persuasive.  (Tr. 17-18).

With respect to Dantoni, Vazquez Gonzalez, and Vinluan, the ALJ found their opinions to be

persuasive in view of their examinations of plaintiff or review of his records, their program

---

[4]  McMarrow's treatment notes indicate that she discussed the option of revision surgery with plaintiff.
(Tr. 1259-65).  During the administrative hearing, plaintiff testified that McMarrow recommended the surgery to
plaintiff.  (Tr. 45 ("she wants to actually remove the entire hardware and put a new one in[;] . . . [t]hat's what she
wants me to do")).

knowledge, and because the limitations assessed were "generally consistent with the medical

evidence of record." (*Id.*).  With respect to Hausmann, the ALJ found his opinion persuasive,

although the basis for this conclusion is less than clear.  The ALJ indicated that the "more

restrictive earlier opinions are not adopted and the residual functional capacity is more restrictive

than the last opinion, but the continuum opined by the doctor tracks the recovery."[5] (*Id.*).

    Review of the medical record, however, demonstrates that plaintiff's lumbar

impairment deteriorated following the opinions of these physicians, despite the exhaustion of

conservative treatment modalities, leading to a recommendation for surgical intervention.  These

significant developments call into question the reliability and probative value of the medical

opinions upon which the ALJ relied.  On this record, I find that the medical opinions of record

are stale and that remand is required for the ALJ to obtain a more current medical assessment of

plaintiff's functional capacity related to his lumbar impairment.  *See, e.g.*, *Rachel J v. Comm'r of

Soc. Sec.*, 2022 WL 205691, *7 (W.D.N.Y. 2022) (remanding due to the ALJ's reliance on stale

medical opinions; "after the above-noted opinions considered by the ALJ, [p]laintiff underwent

additional surgeries, her lumbar spine conditions worsened, and . . . her treating spine physician[]

determined that additional lumbar surgery was warranted[;] [this] evidence . . . suggests that

[p]laitniff's lumbar and shoulder conditions were worse than found by the ALJ and warranted an

updated opinion"); *Irby v. Comm'r of Soc. Sec.*, 2019 WL 6696778, *7-8 (W.D.N.Y. 2019)

(finding that ALJ erroneously relied on stale opinions regarding claimant's hand functioning;

"[consultative examiner's] evaluation was clearly stale with respect to the functioning of both

---

[5]  Three opinions issued by Hausmann are contained in the record.  The first – and most limiting – opinion, dated May 17, 2018 (Tr. 682-86) is the only opinion explicitly discussed by the ALJ.  The second opinion, which assesses slightly less limiting restrictions, was issued on July 16, 2019 (Tr. 922-25), and the third opinion, the least restrictive of the three, was issued on February 28, 2020 (Tr. 1174-77).  While a longitudinal review of the three opinions suggests that plaintiff experienced gradual improvement after his surgery, prior to rendering his last opinion Hausmann was not able to review the most recent (and more in-depth) imaging ordered by McMarrow on March 31, 2020, nor was he aware of her subsequent recommendation for a revision surgery.

hands: it was completed immediately after [claimant's] first surgery – so close that she could not

evaluate [claimant's] right hand – and before [claimant's] left-hand surgery even took place");

*Pagano v. Comm'r of Soc. Sec.*, 2017 WL 4276653, *5 (W.D.N.Y. 2017) ("[a] stale medical

opinion, like one that is rendered before a surgery, is not substantial evidence to support an

ALJ's finding").

I find unpersuasive the Commissioner's argument that the RFC was substantially

supported because there were no additional "objective findings," such as neurological deficits or

positive straight leg raise tests, demonstrating deterioration in plaintiff's lumbar condition that

were contrary to the findings assessed by the authors of the medical opinions or those considered

by the ALJ. (Docket # 10-1 at 14). To the contrary, plaintiff's medical records are replete with

abnormal objective findings post-surgery, including abnormal gait, weakness in his left leg,

positive straight leg raise and slump tests, and positive Minor's sign. (Tr. 994, 1067, 1075, 1092,

1144, 1148, 1153, 1191, 1192, 1238, 1247, 1252, 1261). Further, although plaintiff's 2020 nerve

conduction study demonstrated improved results over the 2018 study, the results nevertheless

demonstrated that plaintiff continued to suffer from chronic radiculopathy despite the surgery.

(Tr. 1250). The Commissioner also makes the confounding argument that the medical opinions

were not stale because the ALJ considered evidence of plaintiff's functionality both before and

after his surgery. (Docket # 10-1 at 15). Of course, while evidence concerning the plaintiff's

impairments throughout the entire relevant period should be considered, the salient question is

whether the apparent failure of plaintiff's fusion surgery and the recommendation for a revision

surgery was accounted for by the ALJ when he formulated the RFC.

The Court's review of the ALJ's determination is hampered by the cursory and

conclusory nature of the decision. It is well-established that an ALJ must express the reasons

underlying his findings with enough clarity to afford "meaningful judicial review." *Taylor v. Comm'r of Soc. Sec.*, 2015 WL 4649820, *9 (N.D.N.Y. 2015).  To that end, an ALJ must avoid "rote analysis" and "conclusory explanations" and must discuss "the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Pamela P. v. Saul*, 2020 WL 2561106, *5 (N.D.N.Y. 2020) (internal ellipsis and quotation marks omitted).  The ALJ's decision does not conform to these basic standards.

Indeed, apart from summarizing the plaintiff's hearing testimony, notes from his February 2019 surgery, and two images of his lumbar spine – one taken just before his surgery and one taken just after – the remainder of the ALJ's decision merely summarizes the opinion evidence and the ALJ's determination of the relative persuasiveness of that evidence. (Tr. 15-18).  Moreover, the ALJ's evaluation of the opinion evidence is entirely conclusory, stating merely that he found opinions persuasive because they were "consistent with the medical evidence of record," without further discussion.  (Tr. 17-18).  The failure of the ALJ to explain his determination frustrates any meaningful review of the decision, especially because the ALJ failed to discuss the majority of the medical evidence of record.  *See*, *e.g.*, *Elizabeth P. v. Comm'r of Soc. Sec.*, 2022 WL 507367, *6 (N.D.N.Y. 2022) (finding the ALJ's assessment that a doctor's opinion "was persuasive and consistent with the record as well as the examination findings" was cursory and insufficient to explain how she considered the supportability and consistency factors) (internal citations and quotations omitted); *Prieto v. Comm'r of Soc. Sec.*, 2021 WL 3475625, *13 (S.D.N.Y. 2021) ("rather than analyzing the supportability and consistency factors as applied to [the consultative] opinion, the only reasoning the ALJ provided was entirely conclusory; the ALJ said only that [the consulting physician's] opinion was

14

'supported by the medical evidence of record and by her underlying examination'[;] [s]uch a conclusory statement is an insufficient explanation of the supportability factor and is grounds for remand") (internal citations omitted); *Matthews v. Comm'r of Soc. Sec.*, 2018 WL 4356495, *3 (W.D.N.Y. 2018) ("[t]he ALJ's failure to explain his assessment of this portion of [the] opinion prevents the Court from meaningfully reviewing his decision, and warrants remand").

        The absence of meaningful analysis or explanation contributes to this Court's inability to discern whether the ALJ appreciated that plaintiff's neurosurgeon had recommended a revision surgery.  Although the ALJ acknowledged plaintiff's testimony that he developed low back pain following his surgery that worsened over time (Tr. 15), the ALJ did not acknowledge plaintiff's most recent imaging, which suggests possible failure of plaintiff's previous fusion surgery, or McMarrow's recommendation that he undergo revision surgery.  "While the ALJ's decision need not mention every item of testimony presented, . . . or reconcile explicitly every conflicting shred of medical testimony, . . . the ALJ may not ignore or mischaracterize evidence of a person's alleged disability."  *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 14 (S.D.N.Y. 2022) (collecting cases) (quotations and brackets omitted).  In this case, the Court in unable to determine whether the ALJ considered or overlooked this seemingly significant medical development.  *See Cranmer v. Colvin*, 2017 WL 489702, *17 (W.D.N.Y. 2017) ("[t]he ALJ's failure to acknowledge or discuss this important medical event is perplexing[;] it suggests that the ALJ either overlooked the information altogether or purposefully omitted discussion of it in her summary of those treatment records favorable to her conclusion").

        In sum, a longitudinal review of the medical record demonstrates that plaintiff suffers from, among other impairments, a lumbar spine impairment for which he has sought a variety of treatment.  After exhausting conservative treatment options, plaintiff underwent

surgery in February 2019.  Numerous examining and non-examining physicians evaluated plaintiff's functionality, both before and after his surgery, and many opined that he is capable of performing a range of light work.  The record evidence, however, demonstrates that he continued to complain of back pain following his surgery and, after exhausting additional conservative treatments and undergoing more imaging, his neurosurgeon recommended removal of the surgical instrumentation in his back and a revision surgery.

The cursory nature of the ALJ's decision impedes meaningful judicial review. Not only is the Court unable to discern the basis for the ALJ's conclusion that some of the medical opinions of record are "consistent with the medical evidence of record," but the ALJ wholly failed to explain how he relied upon those opinions to formulate the RFC in this matter. These shortcomings are exacerbated by the opinion's failure to even make clear whether the ALJ understood and considered that plaintiff's neurosurgeon had recommended a revision surgery. Under these circumstances, remand for further proceeding is warranted.


## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 10)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further

administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

_s/Marian W. Payson_

MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
August 11, 2023